# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 10-154** |
| **DAVID WARREN, ET AL.** | **SECTION I** |

## <u>ORDER AND REASONS</u>

### *INTRODUCTION*

The above-captioned matter is before the Court on remand from the U.S. Court of Appeals for the Fifth Circuit, which vacated the conviction and sentence of defendant, David Warren, because of this Court's error in denying his motions to sever his trial from that of his co-defendants. *United States v. McRae*, 702 F.3d 806, 828 (5th Cir. 2012). Defendant has filed a motion for recusal of the undersigned U.S. District Judge,[1] and the United States of America has filed a response in opposition.[2] Defendant bases his motion on 28 U.S.C. § 455(a) and (b)(1), which provide:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> . . . .

The Court has considered each alleged basis for recusal, weighing it individually and in the aggregate. After careful review of the legal arguments and facts of the case, the Court concludes that defendant's allegations fail to meet the requirements of § 455(a) and (b)(1).[3]

---

[1] R. Doc. No. 640.
[2] R. Doc. No. 643.
[3] Defendant has not specifically requested an evidentiary hearing, although none is required because defendant's factual allegations are facially insufficient. *See F.T.C. v. Namer*, No.

## *LAW & ANALYSIS*

Section 455(b)(1) requires recusal of a judge who "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Section 455(a) requires recusal when a judge's "impartiality might reasonably be questioned." "These provisions afford separate, though overlapping, grounds for recusal." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). Defendant's motion asserts that the Court's comments and opinions, rather than any "aggregation of [its] judicial rulings," demonstrate reasonably questionable impartiality as well as actual prejudice and bias.

Several broad guidelines govern the Court's consideration of both § 455 provisions. First, the Court should determine whether the alleged bias "was of extrajudicial origin," that is, whether it was based on events or information outside the judicial proceedings. *Id*. at 456 n. 2, 457. If the alleged bias stemmed from an intrajudicial source, only a "display [of] deep-seated favoritism or antagonism that would make fair judgment impossible" suffices to require recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Second, in applying the objective standard of whether a judge's "impartiality might reasonably be questioned," the relevant perspective is that of "the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Andrade*, 338 F.3d at 455 (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). Third, "careful consideration of context" is required; the effect of objectionable remarks cannot be determined in a vacuum. *Id.*

## I. Comments at Sentencing

Defendant has identified certain sentencing remarks that, he argues, demonstrate that a reasonable observer would question the Court's impartiality and that the Court is in fact biased or

---

06-30528, 2007 WL 2974059, at *5 (5th Cir. Oct. 12, 2007).

prejudiced against him. An alleged negative opinion from a prior proceeding does not justify recusal.

The Supreme Court has observed:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky*, 510 U.S. at 550-51. At sentencing, the Court reflected on its perception of the case in light of the evidence and arguments presented at trial and the jury's verdict. The Court's criticism of defendant's conduct and credibility and its commendation of the prosecution do not require recusal.

### A. Comments on the 18 U.S.C. § 3553 factors

18 U.S.C. § 3553(a) requires a judge to consider the following factors when sentencing a defendant:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> © to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .

A review of the record demonstrates that the comments challenged by defendant fall squarely within these factors. The Court first addresses the only allegation of real or perceived bias stemming from an extrajudicial source.

At sentencing, the Court stated that "Henry Glover mattered" and properly attributed this phrase to a newspaper editorial which, in turn, acknowledged its inspiration in the prosecution's

opening statement.[4] Defendant does not allege that the Court relied on extrajudicial *facts* at any point. *See United States v. Bonds*, 18 F.3d 1327, 1331 (6th Cir. 1994). Rather, the Court quoted a source rephrasing or reflecting on a theme from the prosecution's case. Assuming, without deciding,[5] that this quotation could be characterized as reflective of an improper extrajudicial source, the Court examines it for evidence of real or apparent bias. *See Namer*, 2007 WL 2974059, at *4. Even if afforded particular scrutiny, the simple quotation of an editorial stating that a jury verdict demonstrated a victim "mattered" would not suggest improper partiality to an objective observer. *See Miller v. Hendricks*, 282 F. App'x 102, 105 (3d Cir. 2008) ("recusal [is] not required where [a] judge 'reads newspaper articles, magazines, or books that may relate to a case that may come before him'") (quoting *Bonds*, 18 F.3d at 1330 (6th Cir. 1994)); *see also Liteky*, 510 U.S. at 545.

The Court also stated that "Henry Glover's family and your [defendant's] family both want justice. I pray that I am in some small way able to provide a measure of justice in this case."[6] Defendant asserts that this statement is evidence that "[t]he Court sought to provide a measure of

---

[4]*See* Jarvis DeBerry, *Police were wrong to think no one cared about Henry Glover*, THE TIMES-PICAYUNE, Dec. 15, 2010, http://www.nola.com/opinions/index.ssf/2010/12/police_were_wrong_to_think_no.html ("In her opening statement, Assistant U.S. Attorney Tracey Knight told jurors that the police officers involved in Glover's death and disappearance were emboldened by the belief that nobody would ever care about him; in short, that he didn't matter. But his family cared what happened to him, and in finding the three officers guilty, the jurors indicated that they cared, too. Henry Glover mattered. So did and so do we all."); *see also* R. Doc. No. 564, p. 653 (prosecution's opening statement) ("[Defendants] were convinced that no one would ever care about Henry Glover and how he died . . . ."). Transcription citations refer to the pagination of the transcript in its entirety.

[5]*See United States v. Mizell*, 88 F.3d 288, 299 n.5 (5th Cir. 1996) (referring to "knowledge that the subject ought not to possess") (quoting *Liteky*, 510 U.S. at 550)). Almost needless to say, the undersigned U.S. District Judge's perspective that victims matter was not the result of the relevant newspaper editorial. Congress has codified this position in its sentencing laws. *E.g.*, 18 U.S.C. § 3771.

[6]R. Doc. No. 581, p. 9.

justice that would appease the Glover family."[7] Defendant argues the bias shown in this statement is highlighted by the fact that the Court stated the sentence needed "to afford adequate deterrence to other criminal conduct by outlaw law enforcement officers."[8] The first statement speaks for itself in recognizing both aggravating and mitigating circumstances. The Court's deterrence language closely tracks that in § 3553.

In sum, the Court's sentencing statements were an articulation of sentencing law and policy. The Court's past compliance with governing sentencing law cannot be said to show a deep-seated antagonism or favoritism or otherwise suggest that defendant's trial will be unfair if conducted by the undersigned U.S. District Judge. *See Mizell*, 88 F.3d at 300; *United States v. Archbold-Newball*, 554 F.2d 665, 682 (5th Cir. 1977).

### B. Comments on defendant's credibility

At sentencing, the Court characterized Warren's testimony and mitigation arguments as farcical, spurious, contrived, and fabricated.[9] These comments, taken in context, reflect the Court's assessment of Warren's testimony given at trial and the surrounding presentation of the evidence. The impression, or even fact, "that a judge forms a negative opinion of a litigant during the course of a proceeding does not, by itself, constitute bias." *United States v. Diekemper*, 604 F.3d 345, 352 (7th Cir. 2010). The comments on Warren's conduct and credibility "served to explain why the judge imposed the sentence that he did." *Id.* (observing that "statement that [defendant] is 'manipulative, narcissistic, and twisted'" was an appropriate part of sentencing colloquy). They were "necessary to completion of the judge's task." *Liteky*, 510 U.S. at 550-51.

---

[7]R. Doc. No. 640-1, p. 3 (citing R. Doc. No. 581, at p. 9).
[8]R. Doc. No. 581, p. 12.
[9]*Id.* at 10-12.

According to defendant, the Court's comments at sentencing related to the negative impact that his alleged criminal conduct may have on other law enforcement officers "represent a mistrust in Warren." "Mistrust" falls short of the deep-seated antagonism or favoritism that requires recusal. *Liteky*, 510 U.S. at 555. Defendant acknowledges that the Court expressly found defendant's testimony credible during an evidentiary hearing related to a co-defendant's request for re-trial, undermining the allegation of a real or perceived bias.[10] After conducting both subjective and objective inquiries pursuant to § 455, the Court is confident that any such alleged "mistrust" will not actually or in appearance affect defendant's right to a fair trial or the appearance of one.

### C. Comments congratulating the government

At sentencing, the Court "commended" certain government agencies for "unmasking [defendant's] deceit." "[A] judge's 'compliments in the course of legal proceedings should not ordinarily support a partiality challenge." *Andrade*, 338 F.3d at 458 (quoting *Certain Underwriters at Lloyds London v. Oryx Energy Co.*, 944 F. Supp. 566, 568 (S. D. Tex. 1996)). The Court's compliment, perceived by a reasonable observer, was simply a "compliment, not a subliminal message of wrongful bias." *Id.* (discussing situation in which a judge patted a prosecutor on the back, shook his hand, and congratulated him after a "particularly vicious cross-examination" in which a defense witness was "reduced to tears"). Such compliments are not unusual in general. In other instances in defendant's trial, the Court commended to the jury the talent and hard work demonstrated by counsel for both sides.[11]

---

[10]*See* R. Doc. No. 547, p. 6 ("the Court finds that Warren testified credibly during the evidentiary hearing").

[11]R. Doc. No. 576, p. 4312 (after closing arguments, stating "everybody here has worked very, very hard, and I am proud of the job the lawyers have done, as well as your service, to go ahead and make sure that you have everything that you need to make an informed decision in this

## II. Comments at Trial

Warren offers an additional argument, based on the Court's reaction to witness testimony which, he acknowledges, was unrelated to his own conviction.[12] A trial witness employed in law enforcement testified that a co-worker in law enforcement admitted being untruthful to the grand jury because she was "very upset" after an altercation with one of the co-defendants and wanted to frame him.[13] The Court momentarily questioned the trial witness as to whether she contacted the U.S. Attorney's Office or FBI to report the grand jury perjury and putative vengeful motive, and the trial witness testified that she did not tell anyone other than the defendant's attorney because she "did not trust the Department of Justice or the FBI in this matter."[14] The Court dismissed the jury for a 10-minute recess, after which the Court provided a curative instruction to ensure the jury did not attribute improper weight to the Court's questioning.[15] Outside the jury's presence, the undersigned U.S. District Judge remarked to counsel that, if the trial witness – a law enforcement officer herself – had failed to inform prosecutors of evidence that a defendant was being framed by a grand jury witness, that conduct was "morally reprehensible," even if it was not criminal.[16]

Defendant suggests that this interchange gives the impression that the "Court did not believe or trust this witness" and, more generally, that "those critical of the government prosecutors and

---

case"); R. Doc. No. 579, pp. 4420-21 ("This Court and the very talented lawyers in this case all thank you for your service.").
[12]R. Doc. No. 640-1, p. 5.
[13]R. Doc. No. 574, pp. 3756.
[14]*Id.*
[15]*Id.* at 3758. On cross-examination, the prosecution explored this issue further; the record reveals that this basis for cross-examination was known in advance and was not attributable to the Court's inquiry. *Id.* at 3757-58, 3764.
[16]*Id.* at 3757.

the FBI agent were not well received by the Court."[17] With respect to witness credibility, this is an ordinary intrajudicial evaluation. As to the idea that the Court has a general poor reception to individuals critical of prosecutors and the FBI, context does not support such a conclusion.[18] Finally, to the extent that defendant characterizes the judge's non-verbal reaction to the witness as portraying a negative opinion,[19] it is well established that "expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality." *Namer*, 2007 WL 2974059, at *4 (quoting *Liteky*, 510 U.S. at 555-56). There is no objective or subjective reason to believe that this Court cannot provide a fair forum with respect to any allegations of prosecutorial misconduct.

### *CONCLUSION*

"It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Liteky*, 510 U.S. at 551. Only a predisposition that is "wrongful," " inappropriate," or otherwise "beyond what is normal" requires recusal. *Mizell*, 88 F.3d at 299. The Court has thoroughly considered the arguments presented in defendant's motion, applied the appropriate standards for recusal under 28 U.S.C. § 455(a) and (b)(1), and closely examined the single comment characterized as extrajudicial in origin. Nothing in the motion, the record, or the undersigned U.S. District Judge's subjective or objective perspective differentiates this case from other cases on remand such that recusal is appropriate

---

[17]R. Doc. No. 640-1, p. 5.
[18]S*ee, e.g.*, R. Doc. No. 574, pp. 3768-69 (remarking, outside of jury's presence, "I'm not here as any moral judge. I'm here as a federal court judge. . . . Y'all [defense counsel] have your own individual interests representing your clients. I understand that, but my concern is for her [the trial witness], quite frankly.").
[19]R. Doc. No. 642-2, pp. 1-2.

pursuant to under § 455(a) or (b)(1). *See United States v. Partin,* 552 F.2d 621, 639 (5th Cir. 1977) ("the substance [and] the appearance of justice" "are served admirably when the district court judge who retries the case conscientiously attempts to conduct a trial that is fair to both the defendant and the government, as is his duty.").

Accordingly,

**IT IS ORDERED** that the motion is **DENIED**.

New Orleans, Louisiana, February 13, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**